# Kisor's Appeal.

1. A deed was made to trustees "for the use of the Presbyterian and Lutheran congregations respectively as at present organized, &c., but if either congregation deem it conducive to their interests * * the property be equitably divided by a committee of impartial persons selected by both congregations."   One congregation having taken exclusive possession of the property, *held*, that it was a dispute and division between members of an unincorporated society in relation to their rights and privileges, and not merely as tenants in common of real estate, and equity had jurisdiction to restore those excluded to their rights.

2. Relief could be afforded only by equity, and the malcontents could be restrained and held to their duties only by the power of a chancellor.

3. The finding of facts by a master, approved by the court, will be set aside only for plain error.

October 20th 1869.   Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Appeal from the decree of the Court of Common Pleas of *Forest county :* In Equity : No. 117 to October and November Term 1869.

To September Term 1867 of the Court of Common Pleas of Forest county, Henry Kleinstiber and others, trustees of "the German Reformed or Presbyterian Church, known as the Bartholomew Congregation," situate in Tionesta township, filed against Henry Kisor and Henry Behrns, trustees of the Lutheran Church of the township aforesaid, a bill in which they set out—

1. On the 1st of August 1855 Sarah Ann Ford sold to Nicholas

Koch and others about 10 acres of land in Tionesta township in trust for the " German Reformed or Presbyterian Church" now represented by the plaintiffs, and the Lutheran Church now represented by the defendants; the deed was made part of the bill.

2. On the 1st of October 1863 a committee of the joint congregation contracted with William Mathe to erect a church building on the premises for the use of both congregations.

3 & 4. The committee representing the congregations was to furnish all the materials, a man to help the builder, &c., and pay him $130; the money for materials, for the payment of the contractor and other expenses " was raised by a mutual subscription of both churches."

5. When the building was nearly completed the Lutheran congregation, about the 1st of August 1865, " took possession of the building, books and other personal property belonging to both congregations, claiming the ownership, and have kept forcible and exclusive possession" until the time of filing the bill, " denying the right of the German Reformed congregation to the use and occupation of the same" &c.

6. " The plaintiffs claim to be tenants in common with the defendants by virtue of the deed and of the building erected thereon at their mutual expense, and claimed the right to a joint and equal use of the ground and building for the purpose and use for which it was granted."

The prayer was that the plaintiffs should be put into possession jointly with the defendants; that the defendants pay what may be found to be due the plaintiffs for payments made, materials, &c., and such damages as the plaintiffs may have sustained, and that the defendants be enjoined from interfering with plaintiffs' enjoyment of the land and building, &c., and for general relief.

The deed was dated October 1st 1855, and in consideration of $1 conveyed the land to Koch and others " *in trust for the use of the Presbyterian and Lutheran congregations respectively, as at present organized,* or hereafter to be organized, with this provision, however, that if either congregation deem it conducive to their interests the above-mentioned property 'be equitably divided by a committee of impartial persons selected by both congregations."

The defendants by their answer admit the first paragraph of the bill.

2. They say that at the date of the deed there were two congregations worshipping together in an old church on the premises, one Lutheran, the other German Reformed; they admit that the word " Presbyterian" in the deed was intended to indicate the " German Reformed."

3. After the conveyance the two congregations agreed to

articles of association (made part of the answer) for their government as one congregation, and have continued to occupy the property since.

4. They admit the contract to build, but aver that much more than half the money and labor for the erection of the building was contributed by the members at present worshipping in the new church.

5. They deny the allegations of the fifth paragraph of the bill, and say, that after the erection of the church a division occurred in that part of the congregation composed of the German Reformed, and that about one-half of the German Reformed refused to submit to the articles of association, the other half remained with the united congregation, have continued to submit to the articles and are in the possession and enjoyment of the property in common with the Lutherans.

6. They deny that the plaintiffs constitute the Bartholomew congregation or have a right to act on behalf of that church, or have a right "to the possession of the said church edifice or to any share or interest therein or that they have any rights as tenants in common with the said Lutheran congregation."

The parts of the articles and of the facts necessary to an understanding of the case appear in the report of the master, W. H. Mason, Esq., as follows :—

"At some period, probably during the year 1854, a number of persons in the township of Tionesta, being few in number and of small means, and adhering partly to the German Reformed and part to the Lutheran denomination of religion, associated themselves together for the support of the gospel in their·midst. About a year subsequently to the organization of this association, a lady named Sarah Ann Ford conveyed 10 acres of land in said township to Nicholas Koch and others as trustees 'for the Presbyterian and Lutheran congregations respectively as at present organized, with this provision, however, that if either congregation deems it most conductive to their interest, the above-mentioned property be equally divided by a committee of impartial persons, selected by both congregations.' The undisputed testimony shows that by 'Presbyterian' she intended 'German Reformed,' and upon this construction of the clause all the members of the association have uniformly acted. After the execution of the said deed, to wit, December 27th 1858, the members of the association formed and subscribed to an instrument which on its face is denominated a 'constitution;' and of which section 1st of article 1st reads as follows: 'The Union Protestant congregation in Tionesta township, Venango county, Pa., is a legally organized body under the name of the German Union Protestant Congregation.' By the constitution all were admitted as members who 'had been received through baptism

[Kisor's Appeal.]

and confirmation into covenant relation with the Christian church.' Subject to this condition—the adherents of all the denominations of the Christian faith might become members of the organization —and the other clauses, both of the constitution and the by-laws, made in subordination thereto, referred almost exclusively to the government of the congregation as an independent association. Section 2d of article 7th, in relation to the duties of elders * * * reads thus: 'When they are aware that discord and dissatisfaction is in the congregation, they shall exert themselves to the utmost to reconcile the parties and restore peace. If unsuccessful they shall bring it before the whole church council, which is declared in article 4th to consist of 'a president, two trustees, two elders and two deacons—which also comprised the general officers of the church under the constitution.

" Under this organization it seems that the congregation prospered until about the year 1863, or early part of 1864, when dissensions began to spring up. On the one hand the Rev. Mr. Reising began to introduce, with the approval of the Lutherans, the doctrines and forms of the Lutheran Church. It is in evidence that the forms, with the exception of the hymns, were of the Lutheran order; and that he had introduced into the Sunday Schools a Lutheran Catechism, in which the commandments were somewhat altered from those ordinarily used in the Protestant churches. These innovations, or presumed innovations, were met with opposition on the part of some of the members of the congregation, who held to the reformed faith. Thus both sides were in no peaceful mood, when a letter was read in the pulpit by the Rev. Mr. Reising, from a clergyman in the German Reformed Church, named Mr. Shade, announcing that he would preach for the congregation; the pastor remarking that the congregation 'could come to hear him or stay away, just as they pleased.' Mr. Shade came to the church as announced, in company with a candidate for orders in the same church, named Houpt, who preached a sermon to the congregation. After the sermon, the Rev. Mr. Shade requested the German Reformed portion of the congregation to remain, as he wished to say something to them. At this the larger portion of the congregation—composed of all the Lutherans and about one-half of the German Reformed— became angry and excited. Worship was disturbed, bitter words passed and a fight between the parties came very near ensuing. The Lutherans and the portion of the German Reformed members adhering to them, left the church and never returned to it again; but breaking open a partly finished church, which the congregation had been erecting, took possession of the same, took also the church property, and have been holding the same ever since. Since then, one portion has been holding the old church, while the other has occupied the new one, both retain the old name, to

wit, 'Bartholomew Church;' both retain the old constitution and by-laws, and both claim to be the identical church under which they were formerly organized. On the one hand the president and trustees went into the new church, and on the other hand the treasurer remained with the portion remaining in the old church. No mention is made concerning the other officers of the council. The evidence is somewhat conflicting; both as to the numbers comprised in the different parties, and as to the amount contributed by each party for the new church and other property. From the evidence the master concludes that a little more than one-fourth remained with the German Reformed in the old church, and a little less than three-fourths went with the Lutherans to the new one, and the contributions by each party seem to have been in about the same proportion. Since the division the party comprising the Lutherans, while retaining the old constitution have held worship in accordance with the doctrines and forms of the Lutheran Church have maintained the doctrines of confirmation, retained a Lutheran minister, taught their children from the Lutheran Catechism—and it is a somewhat remarkable fact that the witnesses for the defence claiming to be of the German Reformed persuasion testify not only to these facts, but that they have had their children baptized in the Lutheran faith—according to which they bind themselves to educate their children in the doctrines of the Lutheran Church. * * * * The master feels constrained, therefore, to consider all those who call themselves German Reformed and who went with the Lutherans to the new church, as being now members of the Lutheran Church. On the other hand there is just a little doubt that those who worship in the old church are of the German Reformed sect. They have uniformly worshipped under the forms and ministry of that denomination, with the exception that they have had Lutheran ministers to preach for them.

" There is no evidence that the members who hold the old church ever did anything to bring about the secession, unless a dissent perfectly admissible under the constitution, from what they believed the teachings of erroneous doctrines to their children, should be so construed; and if the announcement to them to remain after the sermon by the Rev. Mr. Shade was unwarranted, there is not the slightest evidence that they were cognisant of his intention to make such announcement. Nor at the meeting was there anything said or done tending to a separation, nor contrary to the constitution under which they were organized. It is true the Rev. Mr. Shade proposed to them the support of the missionary, Mr. Houpt, and some promises of money were made for that object; but Mr. Houpt alleged that he did not wish to interfere with the existing arrangements; and the meeting adjourned apparently without consummating any arrangement at all incon-

sistent with the former relations.   On the other hand the evidence is direct, that without waiting for the developing of the purpose of the other party, the Lutherans and their allies severed their connection with their former allies, and took forcible possession of the common property.   There is no evidence that either party has so far used the least means to settle their dispute, prescribed by either Miss Ford or the constitution; but there is evidence of at least one or two propositions to settle by the members retaining the old church, to the members, including leading officers in the new church; and that the offer was refused, with the reply, that they would retain the new church and break down the old one. On the part of the new church the intent seems evident to refuse any compromise at all, or to recognise in any way the alleged rights of those who retained the old church. * * *"

The master reported that the rights of the plaintiffs had been violated, and recommended granting their prayer, "to be put into joint possession with the defendants of the church and church property, but would deny the prayer for further compensation."

After exceptions by the defendants to the master's report, the court made this decree:—

"And now, May 28th 1869, it is ordered and decreed, that the plaintiffs be restored to the joint possession with the defendants in all the premises and church privileges, in accordance with the deed and articles of association, and that the defendants pay the costs of these proceedings."

The defendants appealed to the Supreme Court, and assigned the decree for error.

*A. B. McCalmont* (with whom was *S. D. Irwin*), for appellants.—The arrangement between the two congregations was legal, and could not be dissolved at pleasure.   The conveyance to the two societies was good, and their organization was one which the law will protect: Unangst *v.* Shortz, 5 Wharton 506; Schriber *v.* Rapp, 5 Watts 351; Brown *v.* Lutheran Church, 11 Harris 495.   The majority who adhered to the articles of union are entitled to the church property: App *v.* Lutheran Cong., 6 Barr 201; Winebrenner *v.* Colder, 7 Wright 244; Kerr *v.* Trego, 11 Id. 296.

*G. W. Lathy* (with whom were *J. B. Mechling* and *W. E. Lathy*), for appellees.—The plaintiffs should be restored to their rights, and this can be done by a court of equity: Brown *v.* Lutheran Ch., 11 Harris 495.

The opinion of the court was delivered, January 3d 1870, by

AGNEW, J.—A congregation, since known as the Bartholomew, existed before the year 1855, composed of members of the German Reformed and Lutheran Churches.   By a deed of October

12 P. F. SMITH—28

1st 1855, Sarah Ann Ford conveyed the premises in controversy to trustees—"in trust, for the use of the Presbyterian and Lutheran congregations, ·respectively, as at present organized, or hereafter to be organized; with this provision, however, that if either congregation deem it conducive to their interests the above-mentioned property be equitably divided by a committee of impartial persons selected by both congregations." The "Presbyterian congregation," it is admitted and proved, designates the congregation professing the German Reformed faith. The congregations worshipped together in an old church on the property until 1864. In the meantime they had, on the 27th December 1855, formed a constitution and adopted by-laws for the government of the united congregation, discarding denominational .differences; founded solely on a conscientious reception, by all its members, of the writings of the Old and New Testaments as the. revealed word of God, to be preached in this church in their purity. The by-laws provided fully for measures to allay discord and dissatisfaction, requiring the elders, if unsuccessful, to bring the matters before the whole church council for mediation. In 1864 the congregation undertook the building of a new church on the premises, from their joint means. In the latter part of that year discord arose; after which, in 1865, the Lutherans, with some of the German Reformed members, forcibly took possession of the new building before it was quite finished, and have since held it; refusing to permit the German Reformed congregation to participate with them in its use; and taking to themselves the sole management of the affairs of Bartholomew congregation, on the ground that the German Reformed party were seceders. This bill is brought to restore the German Reformed party to their right to the joint use of the property, to compel an account of the expenses of building the new church, and to enjoin the Lutheran party and their adherents from interfering with the plaintiffs in the use of the joint property, under the deed of gift. The bill prays also for such other relief as the nature and circumstances of the case shall require.

The first question is whether the court below had jurisdiction. The bill is not drawn with a clear apprehension of the rights and relations of the parties, and describes them simply as tenants in common. But the deed of trust is made a part of the bill, and the character of the use and relations of the parties are sufficiently set forth to show that, substantially, the plaintiffs are seeking a restoration of their rights as members of the united congregation, under their articles of association, including the privilege of membership, as well as the use of the joint property; and the decree of the court below was made accordingly. Under these circumstances, the Court of Common Pleas had jurisdiction of the bill, and the case does not fall within the decision in North Penn. Coal

Co. v. Snowden, 6 Wright 488. The Courts of Common Pleas have the jurisdiction and powers of a court of chancery so far as relates to the supervision and control of all corporations (other than those of a municipal character) and unincorporated societies or associations, and partnerships;" "the prevention, or restraint of the continuance, of acts contrary to law, and prejudicial to the interests of the community, or the rights of individuals;" and "the affording specific relief, when a recovery in damages would be an inadequate remedy." This is a dispute and division between members of an unincorporated society, in relation to the enjoyment of their rights and privileges as an association, and not merely as tenants in common of real estate. By reason of numbers, and of the character of the rights of the parties, damages are unsuitable as a means of redress; and the case admits of no adequate relief at law. Equity alone can apply the required remedy, while the malcontents can be restrained, and held to a full performance of their associated duties, only by the powers of a chancellor. Lowrie, C. J., said, in Kerr v. Trego, 6 Wright 296, "It is the very remedy usually adopted when churches divide into parties, and we applied it in three such cases in the last year. One of the cases was Sutter v. The Dutch Church, 6 Wright 503." See also Thomas v. Ellmaker, 1 Parsons 98; Price v. Maxwell, 4 Casey 23; Stockdale v. Ullery, 1 Wright 486.

The finding of facts by a master, sanctioned by the approval of the court below, will not be set aside except for plain error. In this case there is no such error. The appellants committed the first wrong. There is no evidence that the Rev. Mr. Shade, and the young candidate, Mr. Houpt, were invited to preach by the German Reformed congregation. Possibly some members may have been informed of their design, yet of this there is no actual proof. But the evidence of the appellants shows that these gentlemen came there of their own motion, and probably under the instruction of the classes to which they belonged. The Rev. Mr. Reising himself, who headed the Lutherans, says that Mr. Shade sent a letter which was handed to him in the pulpit. He read it to the congregation. It stated that he would come and preach for them. Reising, in making the announcement, says he told them they could come to hear him, or stay away—just as they pleased. Glassinger, another witness, says he was present when Shade came to preach. He had Mr. Houpt, a candidate, with him, who preached. After the sermon Shade requested the German Reformed portion to stay—that he had something to say to them. It is admitted on all sides, this announcement it was which gave rise to the difficulty; angry words, and a fight, almost, ensuing. The witness states that Mr. Reising said, "they could not help it; that the Presbyterian or German Reformed could not allow the Lutheran and German Reformed to stay together."

[Kisor's Appeal.]

It is very evident the unauthorized intrusion of Shade and Houpt began the difficulty; which, instead of being allayed by mild words and an appeal to reason, or a resort to the means pointed out by the rules, was fomented to some extent by the imprudent expressions of Mr. Reising and his Lutheran coadjutors. There is no evidence that there was a predetermined intention on the part of the German Reformed portion to divide the congregation, or to introduce a German Reformed preacher, contrary to rule. It was the duty of the Lutherans and their adherents, if aggrieved by the occurrence in the church, to have sought to repress the discord under the by-laws ; and if that did not avail, to have tendered a partition under the terms of Miss Ford's deed, and not to take forcible and exclusive possession of the new building, denouncing the German Reformed party as seceders, and entitled to no common rights with themselves. There is no doubt there was not a good feeling among the German Reformed party after the occurrences in the church, and still less doubt that Mr. Shade and Mr. Houpt were much to blame as disturbers of the peace of this congregation by their unauthorized intrusion upon its quiet; but this was not secession on part of the German Reformed party.

Finding no error, the decree is affirmed, with costs to be paid by the appellants.