# Boyd et al. *versus* The Insurance Patrol of Philadelphia.

1. Whether the Fire Insurance Patrol of Philadelphia, incorporated by a special Act of Assembly in 1871, P. L., 59 is a public agent auxiliary to the city government of Philadelphia or to its fire department or a public charitable institution cannot be determined from its charter alone. It was error therefore in an action against it to recover damages for the

negligence of its employees to enter a compulsory nonsuit upon the ground that it is a charitable institution upon no other evidence than that of its charter.

2. Whether a corporation acting in the capacity of a public agent solely for the public benefit, though not strictly filling the character of an officer or agent of the government, or a public charitable institution is exempt from the rule of *respondeat superior*, considered but not determined.

3. A. and B., employees of the fire patrol, went with a horse and wagon to remove some tarpaulins, used by the company at a fire, from the fourth story of a building. A. was the driver and remained with his horse on the street while B. went into the building and threw the tarpaulins out of the window. A. warned pedestrians passing on the pavement of the danger. One of the tarpaulins struck a pedestrian as he was passing and so injured him that he died. In an action to recover damages for this negligence brought by his wife and child against A. and B. the court rightly granted a compulsory nonsuit as to A.

January 27th, 1886.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 1 of *Philadelphia county*:   Of July Term 1885, No. 36.

This was an action on the case brought by Julia F. Boyd and Herbert H. Boyd by his guardian and next friend B. W. Andrews against The Insurance Patrol of the city of Philadelphia, and Andrew C. Koockogey and James A. Hutchinson, to recover damages for having negligently thrown from the window of a store in Philadelphia heavy tarpaulins upon Charles Boyd, the husband of Julia F. Boyd and the father of Herbert H. Boyd, whilst he was walking upon a public street of the city of Philadelphia, whereby injuries were inflicted upon him causing his death.   Plea, not guilty.

The following are the facts of the case as they appeared on the trial before BIDDLE, J.   On the third day of May, 1883, there had been a fire on the roof or upper floor of the store of Coon, Brother & Co., 29 South Front street, in the city of Philadelphia.   "The Insurance Patrol," a corporation sustained by the insurance companies of the city, had sent its patrolmen there, and they had used heavy tarpaulins in the fourth floor of this store.   A few days after, on the afternoon of Thursday, May 16th, 1882, two of these patrolmen, Hutchinson and Koockogey, went to the store with a one-horse wagon to bring the tarpaulins away.   They were folded up into bundles in the fourth story of the store.   Instead of putting them on a hoist which ran up and down a large hatchway alongside of these tarpaulins, they were pitched out of the window upon the pavement.   Koockogey was standing at his horse's head and gave notice to passers-by on the pavement that they might not be struck by the tarpaulins when thrown

[Boyd v. Insurance Patrol of Philadelphia.]

out of the window. Hutchinson remained in the fourth story to throw them out. The bundles were quite large and each weighed about fifty pounds.

A little before three o'clock in the afternoon, Charles A. Boyd came from his store, No. 19 South Front street, a few doors above Coon's store, going down Front street. He passed from the pavement to the middle of the street, as if intending to go to the west side, but, when opposite the store of Young & Co., No. 27 South Front,—which was on the north side of a six feet wide alley, from curb to curb, Coon's store being on the south side of this alley,—he veered to the east side to go on the pavement in front of Coon's store.

He was walking rapidly on this occasion, and as he stepped on the curb of Coon's pavement, he heard a cry "Look out;" but it came too late, for, as he went on, the bundle of tarpaulins, which had been thrown or pushed out of the window by Hutchinson, struck him on the back and broke his spine, and he died on the following Friday.

The evidence of all the witnesses was that there was no warning given of the throwing down of the bundle until it was too late. The cry "Look out" and the striking of Mr. Boyd were both at the same instant.

The Fire Insurance Patrol of the city of Philadelphia incorporated by an Act of Assembly, P. L., 1871, 59, sections 3 and 4 of said Act, show the object of said company.

Sec. 3. The object of the corporation shall be to protect and save life and property in or contiguous to burning buildings, and to remove and take charge of such property, or any part thereof, when necessary.

Sec. 4. The said corporation shall have power to provide suitable places for the transaction of its business, and also to provide a patrol of men and a competent person to act as superintendent, with suitable apparatus to save and preserve life or property at or after a fire; and the better to enable them so to act with promptness and efficiency, full power is hereby given to such superintendent, and to such patrol, to enter any building on fire, or which may be exposed to or in danger of damage from fire or water, and at once proceed to protect and endeavor to save the property therein, and to remove such property, or any part thereof, during or after such fire; nothing in this Act, however, shall warrant an interference with the orders of the chief engineer of the fire department, in reference to the action of the firemen in their duties in extinguishing a fire : Provided, that nothing herein contained be construed to affect or interfere with the power or duties of the officers of the police department of the city of Philadelphia, at fires occurring within the limits of the said city.

[Boyd *v.* Insurance Patrol of Philadelphia.]

After the plaintiffs had submitted all their evidence the Insurance Patrol and Koockogey moved the court to grant a compulsory nonsuit which was granted.

No evidence was offered on behalf of the remaining defendant, and the jury rendered a verdict for the plaintiffs against him for $25,000.

A motion to take off the nonsuit was made by the plaintiffs, and a motion for a new trial was made by Hutchinson.

These were argued before the Court in *banc.* Both motions were dismissed, BIDDLE, J. filing the following opinion:

" The verdict in this case was large, although not excessive, upon the principle that the jury were entitled to give damages equivalent to the loss which the surviving relatives have sustained, whatever the deceased would probably have earned by his intellectual and bodily labor at his business or profession during the residue of his life, which would have gone for the benefit of his wife and children, taking into consideration his ability and disposition to labor," his habits of living and expenditure. See P. R. R. *v.* Butler, 57 Pa. St., 335; P. R. R. *v.* McCloskey, 23 Id., 526; P. R. R. *v.* Henderson, 51 Id., 315; Catawissa Co. *v.* Arriskay, 52 Id., 282.

He was in the full vigor of manhood, between forty-two and forty-five years of age, of excellent health, who had " never for twelve years missed a day at his store;" very active, engaged in a very prosperous business, his income from it for the preceding five years being twenty-two to twenty-five thousand dollars—four or five thousand dollars a year. The amount of the verdict, even if paid, would be an inadequate compensation to his wife and children, left without means. The judgment will probably be of no value whatever, but it may serve to indicate that Courts and juries estimate at its true value the life of a citizen so recklessly and wantonly taken. The defendant is fortunate that he is not being tried for murder. There are no mitigating circumstances in his case; neither he nor his companion took the stand to justify or excuse his conduct in any way whatever. No reason could be urged why the jury should not give to the widow and children the pecuniary loss sustained by them. We think the verdict should not be disturbed.

Rule discharged.

Opinion of the Court dismissing the motion to take off the nonsuits:

There are two questions of some interest involved in the decision of this case. First, can the trust funds of a charitable corporation be made responsible for the carelessness of those engaged in its management; and second, is one of the

defendants here, " The Fire Insurance Patrol of the City of Philadelphia," a charitable corporation ?

The doctrine of "*respondeat superior*," or that the master should be held responsible for the misconduct of his servant, is derived from the Roman law, where the servant was a slave, and meant no more than if you keep a slave, who has no rights and no property, your property, of which he is a part, must respond for any injury he may do. The injured party cannot be turned over for pecuniary redress to him any more than he could be turned over to your horse or your dog.

This principle has been applied in some cases by our law, where it has been held that a person who is deriving benefit from the employment of another should be held liable for his carelessness.

This doctrine of "*respondeat superior*," as was said by Judge PAXSON in McCullough v. Shoneman, 41 Leg. Int., 439, " is at best a severe rule." To apply it to a charity, where the labor of the servant is not for the benefit of a master, but for the benefit of the public, and to relieve the faithless servant from liability by taking the funds dedicated to the benefit of the public, would certainly be against the public policy of any civilized community. The managers of a corporation instituted for gain are punished when their corporate gains are taken, but what does the manager of a charity care if the trust funds are made responsible for his fault? It is not he who is injured, but the deaf, the halt and the blind, whose funds are dissipated for his misconduct.

It is, of course, not contrary to public policy to permit the funds of a charity to be responsible for the debts incurred in its maintenance ; on the contrary, that liability is essential to its efficient working. It is the very purpose for which the funds are intended. The ability of the trustees to make contracts is promotive of its purpose, under the supervision of our Courts, who see that they are not fraudulently made, while their liability for the misconduct of those managers would be destructive of its purpose. Surely no funds would ever hereafter be devoted to objects of public benefaction if it is established that they may at any moment be swept away by the misconduct of those invested with their management.

In the case of the Feoffees of Heriot Hospital v. Ross, 12 Clark & Finelli, 506, a person eligible for admission brought an action for damages against the trustees of the institution for the wrongful refusal to admit him. The case was brought before the House of Lords on appeal, where it was unanimously held that the action could not be maintained. Lord Campbell said (page 518): " It seems to have been thought that if charity trustees are guilty of a breach of trust, the

[Boyd *v.* Insurance Patrol of Philadelphia.]

persons damnified thereby have a right to be indemnified out of the trust funds. That is contrary to all reason, justice and common sense. Such a perversion of the intention of the donor would lead to most inconvenient consequences. The trustees would in that case be indemnified against the consequences of their own misconduct, and the real object of the charity would be defeated. . . . . . Damages are to be paid from the pocket of the wrong-doer, not from a trust fund. A doctrine so strange as the Court below has laid down in the present case ought to have been supported by the highest authority. There is not any authority, not a single shred here to support it. No foreign or constitutional writer can be referred to for such a purpose." The concurring opinions of Lord Cottenham and Lord Brougham were equally strong. . . . . . This we think should rule the present case, the two corporations being almost identical in object and mode of support.

In regard to the defendant, Koockogey, we fail to see that he can be fairly held responsible for this injury. He was the driver of the wagon which went for the goods, and he remained all the time in the street at the head of his horse. It is true that he might have known that his companion would throw the tarpaulin from the window, for he had already thrown two without injuring any one. Could we assume from .that he ought to have known that he would act in the reckless way that he did? In fact Koockogey himself might have been the victim of it. In the case of McCullough *v.* Shoneman, *supra*, which is a precisely similar case, the owner of the building from which the bundles were thrown was charged with complicity in the offence, because he suggested that they should be thrown from the window. The Supreme Court, through Mr. Justice PAXSON, say: It is alleged that he either directly or through the boy that he sent up with the men, directed the bales to be thrown out of the window. Granted; but he did not direct the men to throw them upon the heads of passers-by. They might have been thrown out with perfect safety, and had been on former occasions. Had he directed the men to take them down the stairway and an accident occurred, would he have been responsible? This is not pretended, yet there would be as much reason to hold him in the one case as the other. Shoneman had no reason to suppose that the bales would be thrown out of the window carelessly and so as to injure any one.

The nonsuit, therefore, was properly, we think, entered as to both of these defendants."

The plaintiffs thereupon took this writ, assigning for error

the refusal of the Court to take off the nonsuit as to the Insurance Patrol and Koockogey.

*George Junkin*, for plaintiff in error.—The indisputable facts in this case show that Charles S. Boyd was killed by the negligent and careless manner in which Hutchinson and Koockogey performed work, for which they were employed by the Insurance Patrol; and that this negligence and carelessness occurred whilst they were acting in the scope or course of their employment, and for their acts the corporation is liable: Wharton on Agency, § 475, 129–157; Wharton on Negligence, §§ 157, 161, and cases there cited.

In order to escape this liability, a doctrine novel here and elsewhere is advanced, and was affirmed by the Court below: viz., That the corporation was a charitable one—engaged in doing charitable work—and that, therefore, it is relieved from all liability for the misfeasances or malfeasances of its employés, even although these occur in the very scope or course of their employment.

We deny that the evidence showed that this was a charitable corporation, or doing charitable work; and that even if this were so, that it is thereby made an exception to the law of the land—*respondeat superior*.

If this corporation is engaged in carrying on such a charitable business as makes it a charity within the meaning of the law so as to constitute it an exception to the rule of *respondeat superior*, this must be made to appear affirmatively. The charter alone does not show this. And, apart from the charter, there was no proof.

The charter imposes no obligation upon the corporators to engage in this business.

It prescribes no mode by which its object is to be attained.

It does not make the corporation a public charity in any sense.

The essential idea of a charity is a free benefit to all, or to all of a given class, and here there is nothing to prevent the corporators from confining their efforts to those who are insured in the companies who support this corporation.

*George W. Biddle* and *Arthur Biddle*, (*H. LaBarre Jayne* with them), for defendant in error.—The Insurance Patrol being a corporation created by the legislature, not for profit or private emolument, but for the purpose of performing certain public functions delegated to it by the sovereign power of the state, is a public agent of the general government, and consequently not liable for the malfeasance or negligence of employés, selected by it, but who are in reality public em-

ployés or servants of the Commonwealth: Lane *v.* Cotton, 1 Lord Raymond (1701), 646; Whitefield *v.* Lord LeDespenser, Cowper, 754: Nicholson *v.* Mouncey, 15 East, 384; Schroyer *v.* Lynch, 8 Watts, 453; Alcorn *v.* City of Philadelphia, 44 Pa. St., 448; Elliott *v.* City of Philadelphia, 75 Pa. St., 347; Patterson *v.* Reform School, 92 Pa. St., 229; Dunlop *v.* Moore, 7 Cranch, 242; Maximilian *v.* Mayor, 62 N. Y., 160; Fowle *v.* City of Alexandria, 3 Peters, 409; Knight *v.* City of Philadelphia, 15 W. N. C., 307.

The Insurance Patrol being a public charitable corporation, having no fund appropriated to the payment of damages to individuals for injuries caused by the negligence of its officers or employés, is therefore not liable in actions therefor; Magill *v.* Brown, Brightly, 346; Thomas *v.* Ellmaker, 3 Pa. L. J., 189; Vidal *v.* Girard's Ex'rs, 2 Howard, 196; Humane Co's. Appeal, 88 Pa. St., 389; Bethlehem *v.* Perseverance Fire Co., 81 Pa. St., 445; Russell *v.* Men of Devon, 2 T. R., 672; Feoffees of Heriot's Hospital *v.* Ross, 12 C. & F., 506; Riddle *v.* Proprietors of the Locks, 7 Mass., 187; McDonald *v.* Hospital, 120 Mass., 432; Sherbourne *v.* Yuba Co., 21 Cal., 113; Brown *v.* Vinalhaven, 65 Me., 402; Mitchell *v.* Rockland, 52 Me., 118; Richmond *v.* Long, 17 Grat., 375; Maximilian *v.* Mayor, 62 N. Y., 160; Patterson *v.* Reform School, 92 Pa. St., 229; Hamilton Co. *v.* Mighels, 7 Ohio, 109.

The nonsuit was rightly entered as to Koockogey: McCullough *v.* Shoneman, 14 W. N. C., 397.

Mr. Justice CLARK delivered the opinion of the court October 4th, 1886.

The Insurance Patrol of the city of Philadelphia is a company incorporated by special Act of the legislature of this state: P. L., 1871, page 59; the object of the corporation, as declared in its charter, is " to protect and save life and property, in or contiguous to burning buildings, and to remove and take charge of such property, or any part thereof, when necessary.

On 3d May, 1883, a fire occurred in the roof of the store of Coon Brother & Co., No. 29 South Front street, in the city of Philadelphia. In order to protect the property therein from injury by water, tarpaulins were spread by the patrol upon the upper floor of the building. On 6th May, following, Andrew C. Koockogey and James A. Hutchinson, two of the employés of the patrol, came to remove the tarpaulins, which had remained there from the time of the fire. They backed a wagon to the curb to receive them; Koockogey stood upon the sidewalk, whilst Hutchinson pitched the tarpaulins from the window to the pavement below. One of the bundles, in its

descent, struck Mr. Charles A. Boyd, who was at the time passing on the sidewalk, injured his spine, and from the effects of the injury he, in a few days died.

It is alleged that the employés of the Insurance Patrol were negligent in the discharge of their duty; that through their negligence, Mr. Boyd lost his life, and this suit is brought by his widow and child, not only against the employés of the Insurance Patrol, but against the Patrol itself, to recover the damages which they have sustained, in the death of a husband and father.

At the close of the plaintiffs' case, the Court entered a non-suit as to Koockogey, and also as to the Insurance Patrol, and the jury returned a verdict in $25,000 against Hutchinson alone.   The errors assigned are to the refusal of the Court to take off the nonsuit, as to each of the two defendants named.

The Court was right, we think, in refusing the motion as to Koockogey.   He and Hutchinson, it is true, came together to remove the tarpaulins from the fourth story of the store, and it was doubtless the duty of each, in so doing, to exercise due diligence and care for the safety of those passing, but unless their negligence was joint or concurrent, each was liable for his own negligence only.   Koockogey was the driver; he stood at the horses' head, during the entire transaction, and although they may have together determined to throw the bundles out of the window upon the pavement, he had no reason to suppose that Hutchinson would recklessly throw the bundles upon the heads of the passers by.   There is no evidence that Koockogey was stationed below to give notice, or that they divided the dangers between them.   The case is in this respect, similar to McCullough v. Shoneman, 14 W. N. C., 397, and is governed by it.

It is contended, in the first place, that the Insurance Patrol is a corporation, created, not for profit or private emolument, but for the exercise of a certain public function delegated to it by the state; and in the second place that it is at all events, a public charitable corporation, having no fund appropriated for payment of injuries resulting from negligence of its employés, and that, for both or either of these reasons upon the grounds of public policy the Patrol is exempt from the rule of *respondeat superior.*

It has been repeatedly decided, that, as a general rule, a municipality, in the performance of certain public functions, delegated to it by the sovereignty of the state, is an agent of the government, and is not liable for the malfeasance or negligence of its officers or employés. The officers of the municipality have been held to be quasi civil officers of the government, although appointed by the corporation; they are themselves

personally liable for their malfeasance or nonfeasance in office, but for neither is the corporation responsible. The corporation appoints them to office, but does not in that act sanction their official delinquencies, or render itself liable for their official misconduct: Prother *v.* City of Lexington, 13 B. Munroe, 559. In order to charge a municipal corporation for negligence in the performance of a public work, the law must have imposed a duty on it, so as to make that neglect culpable: Elliott *v.* Philadelphia, 25 P. F. S., 347. Thus, the municipality is charged with the grading and repair of the highways, and the negligence of the officers of the municipality, in this respect, may be visited upon the municipality itself; but unless a duty has been thus imposed, the corporation can not be held.

Therefore in Alcorn *v.* Phila., 8 Wright, 348, it was held, that the city was not responsible for the negligence of a district surveyor, in locating the line of certain lots, by reason of which, a lot holder was compelled to rebuild his house; in Elliott *v.* Philadelphia, 25 P. F. S., 347, that the city was not responsible for the negligence of the police; and in Knight *v.* Phila., 15 W. N. C., 307, that the city was not liable for injuries caused by the negligent driving of a fire engine, by an employé of the fire department. The same doctrine is declared in the courts of other states: Hafford *v.* New Bedford, 16 Gray, 297; Fisher *v.* City of Boston, 104 Mass., 87; Jewett *v.* New Haven, 38 Conn., 373; City of Chicago *v.* Turner, 80 Ill., 419; Howard *v.* City of San Francisco, 51 Cal., 52, &c.

It is true also, as a general rule, that a public officer is not liable for the negligence of his official subordinates, unless he commanded the negligent act to be done: Schoyer *v.* Lynch, 8 Watts, 453; the rule is founded in considerations of public policy (Sawyer *v.* Corse, 17 Grat., 230) has been long recognized, and is one of general application. "The distinction generally turns upon the question whether the persons employed are his servants, employed voluntarily or privately, paid by him and responsible to him, or whether they are his official subordinates, nominated perhaps by him, but officers of the government; in other words, whether the situation of the inferior is that of a public officer or a private servant." In the former case the official superior is not liable for the inferior's acts, in the latter he is: American Lead. Cases, 641. A subordinate officer, when he is an independent officer, must stand or fall by himself; and to him, unless otherwise provided by statute, the maxim *respondeat superior* does not apply: Wh. Neg., 289.

The same rule, it is argued, must be extended to the case of persons acting in the capacity of public agents, engaged in

the service of the public, and acting solely for the public benefit, though not strictly filling the character of officers or agents of the government; and also to public charitable institutions having no fund appropriated to the payment of such damages. The following cases, with others, are relied upon as supporting this view of the law: Russell v. Men of Devon, 2 T. R., 672–3; Feoffees of Heriot Hospital v. Ross, 12 Cl. & Fin., 506; Riddle v. Proprietors, &c., 7 Mass., 187; McDonald v. General Hospital, 120 Mass., 432.

To what extent this rule of exemption may be applied has not been definitely decided in this state; indeed, the precise question has not been considered in any of the cases to which our attention has been called, and there is an apparent conflict in the cases in England, and between the Courts of the several states.

Upon this assumption as to the law, however, it is contended that the Insurance Patrol, whether regarded as a public agent auxiliary to the city of Philadelphia, or to the government, or as a public charitable institution, is not liable for the malfeasance or negligence of its employés.

But the Fire Insurance Patrol is of course neither a municipal corporation nor a public officer, nor can we say with certainty, from the charter alone, that it is a public agent, auxiliary to the city government of Philadelphia, or to its fire department, or that it is even a public charitable institution. It will be observed that there is no proof whatever as to whether or not the Insurance Patrol has any working capital; whether any, and if any what, incomes or sources of revenue it may have, as means of conducting its business, or as to the manner in which its business is or has been conducted, whether as a general or public charity or otherwise; the only evidence on the subject is the charter, under which it is authorized to act. There is, it is true, no provision in the charter for capital stock, for dividends of profits, or for rates of charge. On the other hand the charter contains no express provision that the corporation is to be conducted wholly in the public interest or as a public charity, it is not stated that it will be supported by voluntary contribution, or by appropriation, for the state or the city, or that its services will be gratuitously rendered.

In a trading corporation the amount of the capital stock and the number of shares are sometimes fixed by the charter, with special reference to the purposes of the grant; and a sound policy to prevent monopolies, and to confine the action of companies in proper bounds would suggest this should always be done. But when the capital is not restricted, and the number of shares is not defined in the charter, these matters will depend upon the subsequent agreement of the corpora-

[Boyd *v.* Insurance Patrol of Philadelphia.]

tors, who may in their "rules, regulations and by-laws for the well ordering of the business and affairs of the corporation," determine not only the amount necessary to conduct the business, and adjust the number and value of the shares, as they may deem best for their own convenience and interests, but also the rates of charge and the method of dividing the profits. The operation of a society for the protection of life and property at fires might perhaps be regarded as exercising a public function. Such a society would certainly be the proper object of a gift for charitable uses. For as this Court said in Price *v.* Maxwell, 4 Casey, 35, adopting the language of the late Horace Binney, whatever is given for the love of God, or for the love of your neighbor, in the catholic and universal sense —given from these motives and to these ends—free from the stain or taint of every consideration that is personal, private or selfish, is a gift for charitable uses, according to that religion from which the law of charitable uses has been derived.

But that which is the purpose of a public charity may be the distinctive purpose of a trading corporation, out of which it is proposed to realize profits; it is not the object alone of a corporation which makes it charitable within the meaning of the law, it is the mode in which that object is sought to be attained, as well as the purpose for which it is pursued. A private corporation, exercising a public function, or engaged in charitable work for private gain, can certainly in no sense be characterized either as a public agent or as a public charitable institution.

On the other hand a voluntary association of individuals, who have contributed funds for a purely public purpose will be regarded as a charity: Thomas *v.* Ellmaker, 1 Parsons, 98. Thus in Humane Fire Co.'s Appeal, 7 Norris, 389, the object of the corporation was the protection of property from fire, but the fact was assumed, and the case considered upon the ground,that the company was in fact not a trading corporation designed to make money for its shareholders, but a charity incorporated as a public benefaction; it was therefore held that the assets were held in trust for the public, and were not distributable among the members at dissolution. So in Bethlehem Bor. *v.* Perseverance Fire Co., 31 P. F. S., 445, the charter declared the object of the corporation to be "the protection of the property of our fellow-citizens from fire," but the proof exhibited the fact that the corporation was conducted as a charity, that its property had been acquired by voluntary subscription, by public entertainments, &c., and it was held that the organization was not for the private gain of its members, and the property in aid of the object was for charitable uses.

[In re Airy Street.]

The general rule undoubtedly is that a master is liable for the negligence of his servant, within the scope of his employment; if the Fire Insurance Patrol is to be exempt from the operation of this general rule of the law, it must exhibit and establish the ground of its exemption. The charter alone is, in our opinion, inadequate for the purpose. If it were shown that, although the charter is silent on the subject, the corporation was in fact conducted as a public charity, that its services were gratuitously rendered to the public for the public good, then the question which has been so ably discussed in this case, would be raised for our consideration.

If it be true that the Insurance Patrol has been invested with a public function, which it exercises for the public good as a public agent, and not for private gain, or if it has been conducted as a public charitable institution, the facts should appear in the proofs; and in order that this, if it be so, may be shown, and the question suggested may come properly before us for adjudication, the

Judgment is reversed and a *procedendo* awarded.