**Dominic A. ESPOSITO, Guardian of the Estate of David J. McClintock, Jr., a minor**

v.

**Ralph EMERY, Fred Basehore, Cecil Spencer and Elwood C. Stabley.**

Civ. A. No. 32743.

United States District Court
E. D. Pennsylvania.

April 21, 1965.

G. Clinton Fogwell, Jr., West Chester, Pa., for plaintiff.

Francis E. Marshall, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

This case is before the court on the defendants' Motion for Summary Judgment (Document 9). The sole issue of law raised by the defendants' Motion in this case is whether or not a principal, assistant principal, director of administrative services, and janitor of a school district in Pennsylvania are immune from liability for their negligent acts or omissions committed within the scope of their authority.

Briefly stated, the facts are that on January 3, 1962, David J. McClintock, Jr., age 7, a student at the Unionville (Chester County) Elementary School, in attempting to open one of a bank of lockers, had them fall over and strike him, causing an alleged resultant permanent ear condition. The door of the locker which the boy was attempting to open was initially binding, probably because of recent paint which had been applied

to the lockers (see Stipulated Statement of Facts, being Document 11).

▮ Plaintiff does not contest the rule that a school district in Pennsylvania falls under the doctrine of sovereign immunity and is not liable for negligence committed by its agents while performing their governmental function; nor does the plaintiff argue that the proper maintenance of a public school building and its equipment is not a governmental function insofar as a suit against the school board is concerned. Plaintiff's contention is that agents and servants of a school district are liable for their own personal tortious acts committed within the scope of their authority, which acts cause injury to others. Both parties agree that the immediate question is one of Pennsylvania law [1] and that the precise question involved has never been decided by the appellate courts of Pennsylvania. Thus, it is incumbent upon this court to make its own determination of what the Pennsylvania Supreme Court would probably rule in a similar case. Gullborg v. Rizzo, 331 F.2d 557 (3rd Cir. 1964). An examination of the decisions of Pennsylvania trial courts and of the law of other jurisdictions should be made in arriving at the above determination. Gullborg v. Rizzo, supra.

▮ Sovereign immunity is a medieval concept which stemmed from the divine right of kings.[2] This later developed into the maxim of law that "the king can do no wrong." [3] The doctrine eventually came to be applied in this country to both Federal and State branches of government. The doctrine survives today in Pennsylvania,[4] though it has been the subject of much criticism.[5] That a school district is a state agency which, while performing its designated governmental function, falls within the doctrine is clear. Shields v. Pittsburgh Sch. Dist., 408 Pa. 388, 184 A.2d 240 (1962); Norris v. Mt. Lebanon Twp. Sch. Dist., 393 Pa. 633, 144 A.2d 737 (1958); Ford v. Kendall Borough School District, 121 Pa. 543, 15 A. 812 (1888). Further, maintenance of school facilities is within the designated governmental function of school districts, see 24 P.S. § 7–701.[6] The question is, then, whether or not this immunity accorded to the school board extends to the actual tortious actors, themselves, particularly those who are employed on a full-time basis.

Defendants first rely on Pennsylvania lower court cases which hold that the members of a school board are not individually liable for their negligence in the performance of their governmental functions. See, e. g., Peters v. Luzerne Township School District, 24 Fay.L.J. 116 (1961). From this the defendants draw the conclusion that the individual agents and servants of the board should not be liable in the performance of governmental functions, even if done negligently. However, the rationale for not holding the school directors liable individually is that they form a corporate body and their acts are corporate ones, even when carried out individually. Since, as discussed above, the corporate body of the school board comes within the doctrine of sovereign immunity, the

---

1. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

2. Pollock & Maitland, The History of English Law, 518 (1909 Ed.)

3. An early recorded decision dealing with the sovereign immunity is the English case of Russel v. Men of Devon, 2 T.R. 667, 100 Eng.Rep. 359 (1788).

4. Commonwealth v. Berks County, 364 Pa. 447, 72 A.2d 129 (1950).

5. See 35 Temple L.Q. 112 (1961), and Coughlin, Can the King Do No Wrong on the Highway, 27 Pa.B.A.Q. 69 (1955).

6. Defendants' reliance on the Restatement, Torts, § 887 (1939), is misplaced. This section states that only the State is completely free from liability for torts and the following language is used in Comment a:
"The common law regards all persons of whatever age or physical condition as being subject to tort liability. There is in this respect no legal incapacity."

individual directors are held to be equally immune. Further, the courts have rationalized that it would be against public policy to hold voluntary, uncompensated citizens who are serving as school directors liable in these situations. See *Peters case,* supra. Thus, a conclusion does not necessarily follow that the servants and agents of a school board, who are full-time employees, are free from liability for negligent acts because immunity is granted to individual directors, as the individual acts of the agents and servants are not clothed with the same corporate character as the acts of the directors.

In Hess v. School District of City of Harrisburg, 69 Dauph. 77 (1956), relied on by defendants, the court sustained the defendant's preliminary objection which stated, in substance, that an action against the school's class instructor is in fact a second suit against the school district on the same set of facts. There was no discussion in the decision of why this objection was sustained or on the issue of the personal liability of individuals who are the agents and servants of the school board. Plaintiff contends that doubt is thrown on the *Hess case* by the appellate court case of Guerrieri v. Tyson, 147 Pa.Super. 239, 24 A.2d 468 (1942), in which a school teacher was held liable for the negligent treatment of a child's infected finger. In *Guerrieri,* the teacher had treated the child's infected finger by forcibly immersing it in boiling water. In holding the teacher liable, the opinion did not discuss the question of the teacher's immunity from suit. Defendants contend that *Guerrieri* is not applicable to the case at bar

because the teacher there had clearly acted outside the scope of his authority. However, the undersigned fails to see how treating an injured child is outside the scope of authority of a teacher anymore than maintenance of a public school building and its equipment by the servants and agents of the school board is. Thus, the *Guerrieri* case, despite its lack of discussion of the instant problem, is entitled to some weight as an indication of how the appellate courts of Pennsylvania would determine the instant issue.

Both parties attempt to analogize the position of servants and agents of the school board to the liability of public officials in Pennsylvania acting within the scope of their authority. However, the cases cited by both parties are not in point with the case at bar, either because such cases do not concern negligent acts of public officials or because the acts concerned were "judicial" or discretionary acts.[7] The position of the Supreme Court of Pennsylvania on the issue of liability of public officers is indicated in Com. To Use of Orris v. Roberts, 392 Pa. 572, 141 A.2d 393 (1958). The immediate question in this case concerned the vicarious liability of a public officer for the wrongful act of subordinates. The court stated at pages 575–576, 141 A.2d at page 395:

"The rule in Pennsylvania, as well as in other jurisdictions, is that a public officer is not liable for the negligence of his official subordinates unless he commanded the negligent act to be done."

This quote would seem to indicate that government officials are liable for their own personal tortious acts but are not

7. E. g., Yealy v. Fink, 43 Pa. 212 (1862). This case, cited by the defendants, held that a public official was not liable for a mistake in judgment as long as the judgment made was one within the discretion of the official which was specifically authorized by the state. In *Yealy,* the defendants were town supervisors who built a road in a manner which was within the latitude of discretion authorized to them. Plaintiff's injury resulted from the method used in the construction of the road. These facts are distinguishable from the instant case, as defendants have not shown that they were authorized to paint the school lockers in such a manner that the doors would initially bind when they were opened. Jenkin's Sportswear v. City of Pittston, 22 Pa.Dist. & Co.2d 566 (1960), is similarly distinguishable as the rule stated there concerned the liability of the Mayor or Chief of Police for acts done in an attempt to preserve the peace.

liable through the maxim of respondeat superior. The court continued, immediately after the above quotation:

"This principle and its rationale were graphically set forth in Boyd v. The Insurance Patrol of Philadelphia, 113 Pa. 269, 278, 6 A. 536, 538, where this court said: '* * A subordinate officer, when he is an independent officer, must stand or fall by himself; and to him * * the maxim *respondeat superior* does not apply: Whart.Neg. 289.'"

In *Boyd,* supra, the trial court had held an employee of a fire company liable in an action on the case for having negligently thrown from the window of a store a heavy tarpaulin, which hit and killed a passerby on the sidewalk. Although the issue of the liability of this particular employee was not in issue on appeal, the Supreme Court of Pennsylvania did comment, 113 Pa. at page 277, 6 A. at page 537:

"It has been repeatedly decided that, as a general rule, a municipality, in the ·performance of certain public functions, delegated to it by the sovereignty of the state, is an agent of the government, and is not liable for the malfeasance or negligence of its officers or employees. The officers of the municipality have been held to be quasi civil officers of the government, although appointed by the corporation. *They are themselves personally liable for their malfeasance or non-feasance in office,* but for neither is the corporation responsible." (Emphasis supplied.)

■ As applied to the case at bar, *Boyd* and Commonwealth To Use of

Orris v. Roberts indicate that the Supreme Court of Pennsylvania would rule that the servants and agents of a school board are liable for their own personal tortious acts, but may not be held vicariously liable for the torts of any other servant or agent. This holding is in accord with the Kentucky case of Whitt v. Reed, 239 S.W.2d 489,[8] 32 A.L.R.2d 1160 (Ky.Ct.App.1951), in which the Kentucky Court of Appeals held that a school principal, superintendent, maintenance supervisor, and janitor could be held liable for their own personal tortious acts.[9] Thus, the indicated ruling of the Pennsylvania Supreme Court is in accord with the decisions of other jurisdictions.

The defendants' Motion for Summary Judgment will be denied.

---

8. This holding is also in accord with the general personal liability of an agent for his torts, even when acting on a principal's behalf. See Restatement (2d), Agency, § 343 (1958).

9. Also see Annot., 32 A.L.R.2d 1163, 1167 (1953), where this language is used:
"There is considerable authority to the effect that such immunity [governmental] does extend to school officers or employees individually, provided the negligence is not committed in the execution of a ministerial act, but that it does not protect the officer or the employee from liability for his individual negligence."
Cf. Cianii v. Board of Education of City School District of City of Rye, 18 A.D. 2d 930, 238 N.Y.S.2d 547 (1963).