Dominic A. ESPOSITO, Guardian of the Estate of David J. McClintock, Jr.

v.

Ralph EMERY and Cecil Spencer.

Civ. A. No. 32743.

United States District Court
E. D. Pennsylvania.

April 6, 1967.

G. Clinton Fogwell, Jr., West Chester, Pa., for plaintiff.

Francis E. Marshall, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, District Judge.

On January 3, 1962, David J. McClintock, Jr., a second grade student in the Unionville Elementary School, was injured when he pulled a bank of four lockers over on himself. Suit was instituted against, inter alia,[1] Ralph Emery and Cecil Spencer, respectively principal and head custodian of the school. The suit charges Emery and Spencer with negligence for failure to inspect the lockers and to correct the defective condition which a reasonable inspection would have disclosed and, alternatively, with failure to correct or to warn of an obvious danger. These defendants denied that it was the duty of either to inspect the lockers and denied, further, the existence of a condition of obvious danger.

In the early stages of this litigation defendants moved for summary judgment on the ground of governmental immunity granted to school districts in Pennsylvania (see e. g., Dillon v. York City School District, 422 Pa. 103, 220 A.2d 896 (1966); Shields v. Pittsburgh School District, 408 Pa. 388, 184 A.2d 240 (1962)). In denying that motion my colleague, Judge Van Dusen, ruled that the individual defendants, servants and agents of the school board, could be held liable for their own *personal* tortious acts, but could not be held vicariously liable for the torts of other servants or agents. See Esposito v. Emery, 249 F.Supp. 308 (E.D.Pa.1965); cf. Commonwealth to Use of Orris v. Roberts, 392 Pa. 572, 141 A.2d 393, 71 A.L.R.2d 1124 (1958). Thus, the inquiry here is directed to whether either

defendant was himself guilty of tortious conduct.

The case was tried to a jury. At the close of the plaintiff's evidence and again at the close of all the evidence, the defendants moved for a directed verdict under Rule 50(b), F.R.Civ.P. The motions were held under advisement and the case was submitted to the jury on special interrogatories.[2] The jury was unable to agree on an answer to the first interrogatory and was discharged without having arrived at a special verdict. Before me now is the motion of defendants for entry of judgment in accordance with their motion for directed verdict.

■ The question presented by defendants' motion is whether, viewing the evidence and all reasonable inferences in the light most favorable to the plaintiff, a case of negligence has been made out. Moore's Federal Practice ¶ 50.07 (2d ed. 1966); cf. Sano v. Pennsylvania R. R., 282 F.2d 936 (3d Cir. 1960); Meyonberg v. Pennsylvania R. R., 165 F.2d 50 (3d Cir. 1947).

The accident happened when David McClintock, seven years old and weighing approximately 49 pounds, attempted to open the door to his assigned locker, one of a bank of four. The door stuck, he pulled and the bank of lockers toppled over onto him, pinning him to the floor and causing serious head injuries. David testified that the lockers seemed "a little wobbly."

The individual lockers in question were described as about 5½ feet in height and 15 inches square, with the weight of the bank of four estimated at approximately 150 to 200 pounds. Twenty lockers, in banks of four, were standing in a row against one wall in the school's front corridor. The lockers were freestanding, i. e. they were not fastened

---

1. Other defendants were: Fred Basehore, Assistant Principal, against whom the action was dismissed by agreement before any testimony was taken; and Elwood C. Stabley, Director of Administrative Service for the Unionville-Chadds Ford School District, whose motion to dismiss was granted at the close of plaintiff's case.

2. See Appendix.

to the floor or to the wall. Each individual locker had four legs. A wooden "skirt" or dust guard covered the legs at the front and on one end of the row of 20 lockers. At the uncovered end of the row, holes of a small diameter were observable in the exposed legs of the locker. Lockers were located in areas of the school building other than the front corridor. Prior to the date of the accident, some of the lockers in the other areas had been secured in one way or another. One group was recessed into the wall; another group, described as approximately 6½ feet in height, was bolted to the concrete floor; and one bank of lockers was fastened to a wall by means of a bracket extending it 3 or 4 inches from the wall, apparently to provide access to a light switch behind it.

In summary the evidence bearing on negligence was that the lockers in question were located in the corridor of the school's front hall, in close proximity to the principal's office; that they were not fastened to the floor or to the wall; that some other lockers in the school were fastened; that David's locker was a little wobbly; that the principal's and the custodian's duties required each to walk through the front corridor frequently and regularly; that on the corridor wall behind the lockers was a wooden strip, referred to as a chair rail; that there were holes in the legs of the lockers; and that a bank of four lockers was in fact pulled over by a seven year old, 49 pound boy.

Plaintiff contends that the foregoing, together with all favorable inferences therefrom, was sufficient to support a finding of negligence by a jury. Plaintiff argues that a reasonable inspection would have revealed that the lockers were not secured either to the wall or to the floor; that they could have been secured to the wooden chair rail or bolted to the concrete floor; and that the principal or custodian, or both, should have inspected the lockers and should have discovered the lack of fastening and should have had the condition corrected; or, alternatively, that this was an obviously dangerous condition which both should have noticed in passing the lockers and should have had corrected.

The first question raised is whether either of the alleged tort-feasors breached a duty of care which he owed to the injured child. Dorn v. Leibowitz, 387 Pa. 335, 127 A.2d 734 (1956); Fitzpatrick v. Penfield, 267 Pa. 564, 109 A. 653 (1920); Neyman v. Soutter, 205 Pa. Super. 8, 205 A.2d 685 (1964), aff'd, 417 Pa. 634, 209 A.2d 430 (1965); cf. Stevens v. Reading St. Ry. Co., 384 Pa. 390, 121 A.2d 128 (1956). This depends upon whether either was under a duty to inspect the school building and facilities, whether either was obligated to seek out and to correct defects or to warn of such defects as a reasonable inspection would reveal.

■ There is no evidence to support a finding that either Emery or Spencer was charged with the responsibility of inspecting the physical plant. The evidence was all to the contrary. Unionville Elementary School was one of three schools in the Unionville-Chadds Ford School District. LeVan P. Smith was the supervising principal, and W. Howard Wilson, the supervisor of maintenance, of the School District. Wilson was charged directly with the maintenance and the safety of the buildings and equipment. Wilson and Smith periodically inspected the physical plants within the School District to determine what maintenance and upkeep was required and what repairs were necessary. The inspections were made in the absence of, and without consultation with, the principal and the custodian of the school being inspected. The supervising principal, Smith, relied upon his and the supervisor of maintenance's inspection of the facilities to determine what items needed attention or correction in each school. He did not delegate the inspection function to the school principal or custodian, nor did he seek advice or information from them. Smith expected the principal of a school only to report

obvious conditions that needed attention.

■ Under the division of duties of employees of the School District, it was the function of a principal of a school to administer the teaching program,[3] and the function of the custodian to keep the premises clean. It was the duty of the maintenance supervisor of the School District and, perhaps, the supervising principal, to inspect, discover and correct deficient conditions in the school building and equipment.

All that Emery or Spencer (and more precisely, only Emery) could be charged with, on the evidence in this record, was the duty to report "obvious" conditions. Plaintiff contends that it was "obvious" that the lockers were unsafe in their unfastened state, and that the defendants should have observed it. Moreover, since they passed by the lockers daily, they should have seen or heard the lockers wobble, and should have recognized the danger and reported it for correction.

■■ This record could not support a finding of obvious danger. There was evidence that these lockers were designed and manufactured as free-standing lockers. There was no evidence, expert or otherwise, that it was usual or customary to fasten such lockers, or that it was unsafe to use them in a free-standing condition. True it is that after the accident these lockers were secured to the wooden chair rail in the front corridor, but changes made after an accident are not probative on the issue of apparent danger. Matteson v. New York Cent. & H. R. R. R., 218 Pa. 527, 67 A. 847 (1907); see Seeherman v. Wilkes-Barre Co., 255 Pa. 11, 99 A. 174 (1916). These specific lockers had been in use for at least seven years in the Unionville

School[4] without incident and similar lockers are commonly used in many schools. Further, as to the "obviousness" of the danger, although Smith and Wilson were charged with the duty of inspection and presumably were qualified to observe such things, neither ever observed any condition of the lockers that required correction. Wilson's office was located in the Unionville School building so that he passed by these lockers on many occasions other than on his regular inspection tours.

■ The presence of the small holes in the legs of the lockers could hardly be warning of an obvious danger. There was no testimony concerning the function of such holes and, what is more to the point, nothing to show that either of these defendants knew or had any reason to know what the holes were for. The evidence disclosed only that whatever danger should have been signalled by the small holes, the warning did not get through to the persons charged with the responsibility for maintaining the physical plant and equipment. Under such circumstances, reasonable minds could not conclude that the danger was so obvious as to require either the principal or the custodian to observe and to appreciate the danger and to report it for correction.

■ An additional word concerning Spencer, the head custodian. His job primarily was to keep the building clean. He was also called upon to make repairs, but apparently only those of the "fixit" variety, minor things obviously needing doing, such as replacement of a broken window or fixing a lock on a door. Spencer's duty in that regard was to perform such minor tasks when the defects were pointed out to him. There

---

3. It appeared from the testimony of George Alfred Schell, who succeeded Emery as principal of the Unionville School, that the duties of the principal were expanded in January 1965 to give him complete responsibility over the school building, including maintenance, matters as to which principals had theretofore had no responsibility.

4. They were installed prior to the time Emery became principal. Spencer was custodian at the time, but the evidence is that he had nothing to do with their installation and had nothing to do with moving them at any time after they were installed.

was nothing to indicate that he was required to look for such things as needed to be done.

■ Plaintiff seeks to charge the defendants with the duty to inspect by claiming that they occupied the role of "possessor of land," citing Restatement, Torts 2d, § 383. Obviously the possessor of this school building was the Unionville-Chadds Ford School District. As pointed out above, the School District is immune from suit. The School District's immunity from suit cannot serve to change the status of these defendants from mere employees to possessors of land.

Defendants' motion for judgment will be granted.

### APPENDIX

#### "INTERROGATORIES

"1. Was the condition of the bank of lockers herein involved such as to present an unreasonable risk of harm to the pupils for whose use they were intended?

Yes _____ No _____

"If your answer to interrogatory No. 1 is NO, you need answer no other interrogatories.

"2. Was the defect one which was known or discoverable by the exercise of reasonable care and diligence?

Yes _____ No _____

"If your answer to interrogatory No. 2 is NO, you need answer no other interrogatories.

"3. Do you find that the defendant Emery (the principal) had the duty to inspect the lockers and to correct or give warning of such dangers as a reasonable inspection would have disclosed?

Yes _____ No _____

"4. Do you find that the defendant Spencer (the custodian) had the duty to inspect the lockers and to correct or give warning of such dangers as a reasonable inspection would have disclosed?

Yes _____ No _____

"5. Was the defendant Emery (the principal) negligent for failing to observe an obviously dangerous condition and for failing to give warning of the dangerous condition or for failing to take reasonable steps to have it corrected?

Yes _____ No _____

"6. Was the defendant Spencer (the custodian) negligent for failing to observe an obviously dangerous condition and for failing to give warning of the dangerous condition or for failing to take reasonable steps to have it corrected?

Yes _____ No _____

#### "DAMAGES"

[The interrogatory relating to damages is omitted.]