Dominic A. ESPOSITO, Guardian of the Estate of David J. McClintock, Jr., a minor, Appellant,

v.

Ralph EMERY and Cecil Spencer.

No. 16671.

United States Court of Appeals Third Circuit.

Submitted on Briefs Feb. 21, 1968.

Argued April 16, 1968.

Decided Oct. 2, 1968.

Bennett G. Picker, Tate & Ervin, Philadelphia, Pa., for appellant.

Francis E. Marshall, Marshall, Dennehey & Warner, Philadelphia, Pa. (Harold S. O'Brian, Jr., Philadelphia, Pa. on the brief), for appellee.

William B. Freilich, LaBrum & Doak, Philadelphia, Pa. (Edward C. German, James M. Marsh, Philadelphia, Pa., on the brief), for amicus curiae.

Submitted Feb. 21, 1968

Before BIGGS, KALODNER and FREEDMAN, Circuit Judges.

Argued en banc April 16, 1968

Before HASTIE, Chief Judge, BIGGS, McLAUGHLIN, KALODNER, FREEDMAN, SEITZ and VAN DUSEN,* Circuit Judges.

---

* Van Dusen, J., disqualified himself in body of opinion.

1. Defendants in their answer alleged that the court was without jurisdiction "be-

OPINION OF THE COURT

FREEDMAN, Circuit Judge:

After submission to a panel we ordered this appeal to be argued before the court en banc with McSparran v. Weist, 402 F.2d 867, in order to review the jurisdictional question which we raised sua sponte,[1] where diversity of citizenship is created or "manufactured" by the appointment of a nonresident guardian of a minor, selected solely for the purpose of creating diversity.

On January 3, 1962, David J. McClintock, Jr., a seven year old second grade pupil at the Unionville, Pennsylvania, Elementary School, was seriously injured when a bank of school lockers toppled over on him as he tried to open one of them.

A year later the boy's parents with whom he resided in Pennsylvania petitioned the Orphans' Court of Chester County, Pennsylvania, to appoint Dominic A. Esposito, a resident of Wilmington, Delaware, as guardian of the minor's estate. Their petition expressly averred that "a Guardian is necessary for the Estate of the minor so that suit may be brought in the United States District Court for the Eastern District of Pennsylvania to recover for injuries received by the minor as the result of an accident on January 3, 1962." The petition also averred that the claim, "for which suit will be brought in the United States District Court for the Eastern District of Pennsylvania", was the "sole asset of the estate of the minor." Solely on the basis of the petition the Orphans' Court on January 18, 1963, appointed Esposito as "Guardian of the property of the Estate of David J. McClintock, Jr., without the necessity of filing bond, until such time as assets shall be received by said guardian."

Shortly thereafter Esposito brought the present action for negligence in the

cause of the lack of genuine diversity between minor plaintiff and defendants." They did not press this defense, however, either in the court below or in their original briefs on appeal.

district court against the principal, the assistant principal, the director of administrative services and the janitor of the school, but recognizing its immunity, did not join the school district itself as a defendant. The individual defendants sought summary judgment on the ground that they too were immune from suit for conduct within the scope of their authority as employees of the school district. Their contention was rejected by the district court. 249 F.Supp. 308 (E.D.Pa.1965). In the course of the ensuing jury trial the director of administrative services and the assistant principal were dismissed as parties and the case was submitted to the jury against the two remaining defendants. The jury was unable to agree on one of the questions submitted in special interrogatories, but the court later granted the motion of defendants for judgment on the whole record on the ground that there was no evidence of negligence on their part. 266 F.Supp. 219 (E.D.Pa. 1967). Plaintiff thereupon took this appeal.

It is conceded that the present case is one of artificial or "manufactured" diversity in which an out-of-state guardian was appointed solely for the purpose of creating an apparent federal jurisdiction. As in *McSparran* not only was the straw guardian appointed solely to create diversity jurisdiction, but the controversy itself is essentially local, and one of the reasons underlying diversity jurisdiction, the prevention of discrimination against out-of-state litigants,[2] is completely absent. The accident occurred in Pennsylvania where the injured minor and both the defendants reside and have their citizenship. Moreover, the artificial creation of diversity here cast upon the federal courts the necessity to decide as a matter of first impression an important question of Pennsylvania policy—the immunity of school district officials for torts committed in the performance of their duties, a question in which there is no federal interest

and which it would have been preferable for the state courts themselves to decide.

The case, therefore, is ruled by McSparran v. Weist, decided this day, holding that artificially "manufactured" diversity is insufficient to create federal jurisdiction, although Judge Van Dusen who sat at the rehearing en banc has since disqualified himself from participating in the disposition of this case and the remaining members of the court who sat at the rehearing are evenly divided as to the correctness of the *McSparran* ruling.

■ The accident in this case occurred on January 3, 1962, and Pennsylvania's two-year statute of limitations has long since expired. As we pointed out in *McSparran* it would be harsh to apply our new rule retrospectively to a case such as this, in which the plaintiff's rights would be lost because the statute of limitations bars the institution of a new suit in the state court.

■ We therefore have considered the merits of the case. After examining the evidence we are unanimous in finding it inadequate to establish any negligence by the individual defendants.

The judgment of the district court will be affirmed.

KALODNER, Circuit Judge, concurs in the result on the merits of the case, but dissents from the majority view with respect to the issue of "manufactured" diversity jurisdiction for the reasons stated in Judge Biggs' dissenting opinion.

BIGGS, Circuit Judge (dissenting in part and concurring in part).

As a Senior Circuit Judge, 28 U.S.C. § 371(b), I was not qualified to vote for rehearing or sit at the rehearing in McSparran, et al. v. Weist, et al., at 402 F.2d 867, a "companion" case to the instant case, for I did not sit at the original argument in McSparran. App. Rule 35, 43 F.R.D. 101, and 28 U.S.C. § 46(c). Nonetheless, I think I am en-

---

2. See Lumberman's Mutual Casualty Co. v. Elbert, 348 U.S. 48, 54, 75 S.Ct.

151, 99 L.Ed. 59 (1954), Frankfurter, J., concurring.

titled to state and I do state that what is said in the dissenting portion of this opinion is in all substantial respects equally applicable to the majority's McSparran opinion.

I believe the law as to the application of 28 U.S.C. Section 1359 was stated correctly by this court in Jaffe v. Philadelphia & Western R. Co., 180 F.2d 1010 (1950), in Fallat v. Gouran, 220 F.2d 325 (1955), and in Corabi v. Auto Racing Co., 264 F.2d 748 (en banc, 1959). I shall not repeat generally here what was said in those opinions. I do desire, however, to point out what appear to me to be grave weaknesses in the majority opinion in respect to the application of Section 1359.

The majority opinion states that Jaffe and Corabi are overruled and that Fallat v. Gouran is disapproved to the extent that it indicates approval of "manufactured" diversity, but the court's reasoning for its rulings goes far beyond this and will lead, in my opinion, to substantial difficulties. The majority opinion states: "We are not here concerned, however, with the capacity to sue under Rule 17, nor with the question whether the fiduciary is the real party in interest. Our problem is whether for purposes of diversity jurisdiction we should look to the citizenship of the representative, here the guardian of the estate of the minor, or to the person on whose behalf he acts." The language quoted indicates that the court cares not whether the suit be brought by the real party in interest or not and therefore the court's decision is equally applicable to cases where the plaintiff is the trustee of an express trust, of a resulting trust, or even of a trust *ex maleficio,* an administrator, a *prochein ami,* or any other type of fiduciary.

The reasoning and the rulings of the majority seem to turn on the statement: "Here plaintiff [Esposito] has added

nothing to a record which shows on its face a *naked arrangement* for the selection of an out-of-state guardian in order to prosecute a diversity suit." (Emphasis added). The condition of a "naked arrangement" as a bar to the application of Section 1359 will prove, I think, most troublesome. The primary purpose of the "arrangement" in the case at bar, as in Jaffe v. Philadelphia & Western R. Co., 180 F.2d 1010, 1011 (1950),[1] was to collect a judgment and it probably was concluded by counsel for the widow in Jaffe that a larger judgment could be obtained in a federal court or that the case could be more expeditiously tried there. But what would be this court's ruling in a suit brought by the *cestuis* of an *inter vivos* trust where the donor had appointed an out-of-state fiduciary because he wished the *cestuis* to be able to maintain a diversity suit in a federal court? Would the donor's purpose be any more or less "naked" than that of the persons who petitioned the Orphans' Court to appoint Esposito? I think the answer would have to be in the negative. Moreover, under the circumstances which surround the case at bar and cases like it, can it be said that a trustee under an express trust is any more or less naked in interest than a *prochein ami* or an administrator or an executor? I believe the answer would have to be "No".

If, as the majority opinion states, the issue of who is the real party in interest has no weight (which I believe to be a correct statement of the law), then does not the majority disregard the decision of the Supreme Court in Black & White Taxicab & Transfer Co. v. Brown & Yellow Taxicab & Transfer Co., 276 U.S. 518, 48 S.Ct. 404, 72 L.Ed.2d 681 (1928)? Mr. Justice Butler decided that Section 37 of the Judicial Code of 1911, the precursor of Section 1359, was not applicable where a Tennessee corporation had

---

1. In Jaffe v. Philadelphia & Western R. Co., 180 F.2d 1010, 1011 (1959), it was said: "*Primarily* because it was desired to bring the matter in the federal court, a stenographer in the office of the wid-
ow's attorneys, who is a New Jersey resident, was appointed administratrix *ad prosequendum* of the deceased's estate." (Emphasis added, first instance).

been purposely created and a cause of action assigned to it with other assets by a Kentucky corporation, for the express purpose of creating or "manufacuring" diversity jurisdiction. Mr. Justice Butler said, id. supra at 524, 48 S.Ct. at 405, that Section 37 was inapplicable because *"The succession and transfer were actual, not feigned or merely colorable. In these circumstances, courts will not inquire into motives when deciding concerning their jurisdiction.* McDonald v. Smalley, et al., 1 Pet. 620, 624, 7 L.Ed. 287. *It is enough that respondent is the real party in interest."* (Emphasis added). What palpable difference is there between having a *single* asset transferred by operation of law to the guardian of the estate of a minor and having *all* assets of one corporation transferred to another corporation by action of a board of directors and, probably, stockholders? The former is said to demonstrate a "naked" purpose to create diversity, while the latter does not. The first is said to be lacking in propriety and collusive to boot; the second, in the view of a majority of this court is proper and non-collusive. This seems a mere exercise in semantics.

In Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233 (1931), the widow of the decedent who had been appointed administratrix resigned, and upon her request Mecom was appointed administrator. The purpose of Mecom's appointment was *to avoid and not to create diversity of citizenship.* But Mr. Justice Roberts cogently stated, id. at 189, 52 S.Ct. at 87: *"To go behind the decree of the probate court would be collaterally to attack it, not for lack of jursidiction of the subject-matter or absence of jurisdictional facts, but to inquire into purposes and motives of the parties before that court when, confessedly, they have practiced no fraud upon it."* (Emphasis added). The ruling of the majority is a collateral attack on the decree of State probate courts and as

such should not be permitted. Cf. the provisions of Section 1738.[2] See also Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), which would seem to require the application, at least by analogy, of the principles of the full faith and credit clause, Article IV, Section 1 of the Constitution. Moreover, there is assuredly no fraud asserted in the case at bar and particularly it must be borne in mind that Rule 17, Fed.R. Civ.Proc., 28 U.S.C., as the majority concedes, authorizes Esposito to bring the suit as a party plaintiff.

But in ascertaining what is a "naked arrangement", would not the United States district court in almost every case, at its peril and at the peril of the litigants, have to determine what the purpose, "naked", "primary", or otherwise, which caused or prompted someone on behalf of some kind of a fiduciary to bring suit in the United States court? And would this not require in almost every instance the taking of evidence and an examination not of objective but of subjective criteria, i. e., what was in the mind of the person or persons who moved in Orphans' Court or any probate tribunal to appoint an out-of-state executor or administrator? Would not the district court have to weigh a fact of the sort presented by a case like Fallat v. Gouran, supra, where the daughter of the injured person brought the suit? Is it collusive or improper for a daughter to serve as guardian of her mentally ill father? I would say "No" but others might say differently, and findings of fact as well as conclusions of law would probably have to be made by the trial court in most of these cases. While purporting to abolish the "manufacture" of diversity jurisdiction, the majority rule would elevate such manufacturing to an art difficult to define and even more difficult to combat.

What we were at pains to state in Corabi, viz., that there is nothing collusive or improper in openly going before

2. "Such * * * judicial proceeedings [of State tribunals] * * * shall have the same full faith and credit in every court within the United States * * * as they have by law or usage in the courts of such State. * * *."

a State court on a petition which is a public record to have an out-of-state fiduciary appointed whether that be with the thought of obtaining a larger judgment or to avoid delays of some of our State courts, applies here with equal force. The majority engrafts a novel, and I think an illegal, gloss on Section 1359. I believe that the majority decision will open a fertile field for perjurious testimony and lead to great uncertainty.

I must respectfully dissent from the majority view on the issue of "manufactured" diversity. I concur in the result reached by the majority because under the facts of this case and the law of Pennsylvania, Esposito has not presented a cause of action upon which relief can be granted.

I can perceive no necessity to express any view in this dissenting opinion in respect to the very troublesome issue of prospectivity.

McLAUGHLIN, Circuit Judge, concurs in the opinion of Judge BIGGS herein.